## CLARKE V. THE PEOPLE.

1. PRESUMPTION OF INNOCENCE.— The defendant in a criminal case is entitled to every presumption of innocence consistent with the evidence in the case.

2. CRIMINAL ABORTION.— Evidence examined and found insufficient to support a conviction.

*Error to Criminal Court of Arapahoe County.*

Mr. C. W. McCORD and Mr. EDGAR CAYPLESS, for plaintiff in error.

Mr. ALVIN MARSH, attorney-general, for defendant in error.

MR. JUSTICE HAYT delivered the opinion of the court.

Plaintiff in error, Dr. Uri S. Clarke, was convicted in the criminal court of Arapahoe county of producing an abortion upon a young unmarried woman. There are nearly three hundred folios of evidence certified to this court in the bill of exceptions. Much of this evidence is entirely irrelevant to the issue. Beyond showing that a miscarriage had taken place from the effects of · which death ensued, and that plaintiff in error was the sole attending physician at the time of the abortion and for some time prior and subsequent thereto, but little appears to cast suspicion upon his conduct, while his explanation of his connection with the case is entirely consistent with his innocence of any crime and not inconsistent with the testimony offered by the prosecution.

The deceased first sought the professional services of Dr. Clarke upon the 24th day of February, 1887, and according to the defendant's testimony, which is uncontradicted, she was at that time suffering from " bearing down pains," although a miscarriage did not, in fact, take place until the last day of the month. After this she gradually sank until her death, which occurred upon the 7th day of the month of March following. During this entire period she was attended by her friend and confidante Miss Dell Davidson, while a skilled nurse was also in attendance for several days immediately prior to her death.

Upon the theory that the abortion was the result of a conspiracy between the defendant, the deceased and Miss Davidson, everything that transpired in the sick-room during

this time was allowed to be detailed to the jury by the witness introduced by the state without eliciting anything against the defendant except that he burned the foetus instead of burying it, and that, in reply to a question propounded by the landlady of the house at which Miss Davy, the deceased, was stopping, he had stated that his patient was suffering from inflammation of the bowels, although he well knew at the time that the miscarriage was the real cause of her trouble.

In explanation of the first of these acts it is shown that decomposition had set in, rendering it necessary to dispose of the foetus at once; that the patient required the immediate attention of the defendant at the time, and that there was no other man about the premises to bury the same, and that burning was the most effective as well as the most convenient way to dispose of it. The fact of the decomposition corroborates the theory of the defense, which is that the vitality of the foetus had been destroyed by drugs taken into the system prior to the time at which the defendant was called into the case, and that the abortion was the result of the latent action by such drugs; and as to the misleading statement relating to the nature of the ailment, it is quite as likely to have been made with a view of shielding his patient from any unnecessary publicity and consequent spreading of her disgrace as from any desire to shield himself. The testimony for the defense indicates that Dr. Clarke found the deceased suffering from labor pains upon his first visit; that upon his second visit, which occurred the next day, he cautioned her in reference to the danger she was incurring and warned her against the effects of the course she had entered upon, advising that she should reconcile herself to her condition, let the full time elapse before birth, and that some one could be found who would raise the child did she then desire to part with it. At the end of this visit he was paid for his services and considered himself discharged from the case.

A few days thereafter he was again called, and then found

the deceased threatened with a miscarriage, which took place a few days afterwards; that it was too late even at the first visit to prescribe any medicines to counteract the effects of the drugs which she had previously taken, but that he did prescribe quiet and rest, and that subsequently finding that this would not prevent the abortion he did what he could to relieve the patient and save her life. It is also shown that the day before her death the defendant informed deceased that she was not progressing as favorably as he had hoped, and that he desired a physician in consultation, and advised that her parents in the East should be notified, to both of which propositions she objected, and the matter was finally compromised by his promising to await the developments of the night. Finding her worse instead of better the next forenoon, he caused her father to be notified by telegraph, and sent out for another physician, but owing to some delay the latter did not arrive until shortly before her death, which occurred at about 2 o'clock of that day.

In addition to this evidence it is also shown, both by the witnesses for the prosecution and for the defense, that the deceased, upon being interrogated in reference to the matter shortly before her death, fully exonerated the defendant. Miss Davidson, a witness for the prosecution, testified that the deceased said the doctor was not the cause of her trouble, while the defendant testifies that she said he had not caused her sickness. Counsel for the state, accepting the first statement only as correct, claim that deceased intended thereby simply to indicate that the doctor was not her seducer. There does not appear to be the slightest foundation for this contention, as at all times it was conceded that another party was the author of her ruin. There was not the remotest suspicion against defendant in reference to this matter, and it is evident that the deceased intended fully to exonerate him from being the cause of her sickness. This statement, in view of the circumstances under which it was made, comes with all the force of a

dying declaration and should have been given weight accordingly by the jury.

It is further shown that immediately after her death the defendant took her effects to the coroner, at which time he also notified that official of the cause and circumstances of her death.

The defendant in a criminal case is entitled to every presumption of innocence consistent with the evidence in the case. The evidence in this case is entirely compatible with the innocence of the defendant of the crime of which he was convicted, and the verdict of the jury can only be accounted for upon the theory that they misconceived the testimony, or were influenced by passion or prejudice in weighing the evidence.

The crime charged is one that strikes at the foundation of our social fabric, and is well calculated to arouse the indignation of all right-thinking people; but to allow this conviction to stand would be to violate the fundamental rule of the criminal law fixing the quantum of proof necessary to sustain a conviction. We fully agree with the attorney-general that prudence would have dictated the calling of counsel at an earlier period in the case; but the neglect in this particular cannot be taken as a justification of the verdict and judgment rendered in the court below.

The judgment must be reversed and the cause remanded.

*Reversed.*