Charles **TURNER**, Ernest Russell, Emanuel Williams and Earl L. Miller, Plaintiffs,

v.

John D. **LaBELLE**, John Dempsey, Harold M. Mulvey, William E. Glynn and John J. Kerrigan, Defendants.

**Civ. No. 11121.**

United States District Court
D. Connecticut.

Jan. 25, 1966.

Samuel Gruber, Emanuel Margolis, Stamford, Conn., Richard J. Cromie, Hartford, Conn., for plaintiffs.

Joseph Adinolfi, Jr., Raymond J. Cannon, Asst. Atty. Gen., Bourke G. Spellacy, John D. LaBelle, State's Atty., pro se, George D. Stoughton, Asst. State's Atty., Hartford, Conn., for defendants.

Before SMITH, Circuit Judge, and TIMBERS and CLARIE, District Judges.

J. JOSEPH SMITH, Circuit Judge.

Plaintiffs, four Negro leaders of civil rights groups in Hartford, Connecticut, brought this action to restrain the enforcement of Conn. Gen. Statutes, § 53–44 [1] and to restrain the defendants, the Governor, Attorney General, State's Attorney, Mayor of Hartford, and Hartford Chief of Police, from hindering plaintiffs' exercise of constitutionally guaranteed rights and privileges. Charles Turner is director of the North End Community Action Project (NECAP), an organization described in the complaint as one "whose purpose is to help secure to Negro citizens in [Hartford] and in the State of Connecticut * * * the rights guaranteed to them * * * and to end all forms of discrimination and segregation * * *" Earl Miller and Emanuel Williams are staff members of NECAP, and Ernest Russell is also Executive Director of the Connecticut Council on Human Rights. The complaint alleges § 53–44 is "void and illegal on its face as applied to the plaintiffs", for vagueness.

[1.] "Any person who, in public or private, orally, in writing, in printing or in any other manner, advocates, encourages, justifies, praises, incites or solicits the unlawful burning, injury to or destruction of any public or private property or advocates, encourages, justifies, praises, incites or solicits any assault upon any organization of the armed forces of the United States, as defined by section 27–103, or of this state, as defined by section 27–2, or the police force of this or any other state or upon any officer or member thereof, or the killing or injuring of any class or body of persons, or of any individual, shall be fined not more than five thousand dollars or imprisoned not more than ten years or both."

A relatively short time after the highly publicized violent disturbances and rioting in the Watts area of Los Angeles, NECAP, particularly Turner, scheduled a public civil rights meeting for 7:30 p. m. August 17, 1965. A handbill was distributed, saying, "NECAP will hold a protest demonstration to show our alliance with our black brothers in Los Angeles who died struggling against the very same evils of this society that we, right here in Hartford are faced with."

The Hartford police were informed by NECAP of the proposed meeting and indicated that no permit was necessary. Captain Goldstein of the Hartford police visited Turner at NECAP headquarters on the night of August 16th, however, in an unsuccessful effort to dissuade Turner from holding the meeting at that time

The meeting was held in the North End, the center of Negro habitation in Hartford, and all four plaintiffs addressed the crowd, which numbered between 100 and 150. Police were present in abundance. Witnesses for plaintiffs described the atmosphere as relaxed; those for defendants said it was tense. Transcriptions of recordings of the speeches were placed in evidence. While most of the content of the speeches consisted of vague exhortations for "action, not talk", there were some more particular comments. Russell, according to the transcription, said, "Now I tell you, you treat every cop as your enemy, whether he's white or black until things in America wakes up, until America wakes up." Williams said, "If I can't be imported back, then kill me, kill me, or I'll kill you," and "anyone that's black is so very angry * * * that he wants to fight, that he wants to shoot, well then, only turn your eyes to the left, to the blue shirts." (Apparently police in blue shirts were standing to the left of the crowd.) Plaintiffs did not admit that the transcriptions were accurate.

Following the speeches a symbolic coffin draped in black was carried through the streets to City Hall, accompanied by plaintiffs and 15 or 20 youths. Others joined them at City Hall, making a total of 40 to 50 demonstrators. Nearly the same number of police were present. Apparently there was some scuffling, and a Police Lieutenant was pulled into the crowd, and sustained injuries.

Plaintiffs were then arrested on a charge of breach of the peace. Sent back by plaintiffs to the North End after the arrests, some of the demonstrators stoned cars and broke windows. Later on, Captain Goldstein thumbed through his statute book, and found § 53–44, which had never been used in his memory, and charged plaintiffs under it, too. Plaintiffs were never in jail, having been released on bond; after waiving preliminary examination in the Circuit Court, on September 17, 1965, they were bound over to the next criminal term of the Superior Court for Hartford County, beginning October 5.

On October 4 plaintiffs filed the complaint in this action. On October 15 the State filed informations in Superior Court. Plaintiffs allege that the "sole intention and effect of threatening to enforce [§ 53–44] is to deter, intimidate, hinder and prevent the plaintiffs and those associated with them from exercising their fundamental constitutional rights * * *"

There was testimony that there has been a curtailment of civil rights activity in Hartford as a result of the arrests. There has also been testimony that civil rights demonstrations regularly fall off during winter, and that a curtailment of civil rights activities started before August 17, 1965, as a result of some prosecutions for disorderly conduct after demonstrations against the Chamber of Commerce and the United Parcel Service. There have been demonstrations by civil rights groups without police interference since the arrests here.

By agreement defendant Mulvey, the Attorney General, was dropped as a party, and on motion the action was dismissed as to defendants Dempsey, the Governor, and Glynn, the Mayor. No preliminary injunction issued on defendants' assurance that no prosecution of plaintiffs was imminent. Contrast Dom-

browski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

▆ It has been suggested that no injunction may issue because it is barred by 28 U.S.C. § 2283.[2] That section only bars stays of suits already instituted. In our view the "proceedings" in the Circuit Court were not the same ones as in Superior Court, and were complete when plaintiffs were bound over. Since the proceedings sought to be enjoined here are those in the Superior Court, and since they were instituted by the filing of the information after this suit commenced, § 2283 is no bar. Dombrowski, 380 U.S. 479, 484, n. 2, 85 S.Ct. 1116, 14 L.Ed.2d 22. It is therefore unnecessary to hold that 42 U.S.C. § 1983, one of the statutes under which plaintiffs sue, is an "expressly authorized" exception to § 2283. cf. Cameron v. Johnson, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715 (1965).

▆▆ Turning then to the central issues, it is clear that where plaintiffs are threatened only with usual criminal sanctions and have an adequate remedy for dealing with the alleged unconstitutionality of a statute by way of appeal to the Supreme Court, if necessary, no interference with the state criminal processes is justified. Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). But under certain special circumstances, where "the chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure," an injunction may be proper. Dombrowski, 380 U.S. 479, 487, 85 S.Ct. 1116, 1121. There the Court held that "the abstention doctrine is inappropriate for cases such as the present one where * * * statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities." Id. at 489–490, 85 S.Ct. at 1122. See also Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

Since we believe that a readily apparent construction suggests itself as a vehicle for rehabilitating the statute in a single prosecution, and since plaintiffs have not shown the requisite bad faith of defendants in enforcing the statute, we conclude that the abstention doctrine is appropriate here.

Section 53–44 subjects to criminal penalties anyone who "advocates, encourages, justifies, praises, incites, or solicits any assault upon * * * the police force of this or any other state * * * or the killing or injuring of any class or body of persons, or of any individual * * *." The most vulnerable part of the statute is that part which penalizes praising or justifying. These acts necessarily look to past events, and the statute might be read as penalizing praising the past event without any intention to suggest future conduct, or any such effect. But we do not believe that the legislature intended the statute to be so read, or that a Connecticut court would so interpret it.

▆ Generally it makes sense to ascribe a particular separate meaning to each of a limited number of words used disjunctively in a statute. But where the legislature, out of a desire to assure that no artful semanticist will escape the burden of the statute, employs, indiscriminately, seriatim, a number of similar words, some virtually identical, others differing slightly, the better practice would appear to be to let each help to define the other. Accordingly we read "justifies" and "praises" in the sense of "encourages", "advocates" and "incites".

Thus read, the statute is neither overbroad nor vague, nor does it, though precise, penalize constitutionally protected conduct. To encourage an assault on a policeman or individual is "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or

---

**2.** "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

unrest * * *." Terminiello v. City of Chicago, 337 U.S. 1, 4–5, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949); Feiner v. People of State of New York, 340 U.S. 315, 171 S.Ct. 303, 95 L.Ed. 267 (1951); Cantwell v. State of Connecticut, 310 U.S. 296, 308, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Chaplinsky v. State of New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

█ Nor, even if plaintiffs' conduct is constitutionally protected, have plaintiffs shown that defendants intended to prosecute in bad faith, to discourage civil rights activity. Plaintiffs showed that the police attempted to dissuade Turner from holding the meeting, and that initially they were arrested for breach of the peace, and only after Captain Goldstein found § 53–44 on his own, they were charged under that statute. This is insufficient. See Wells v. Hand, 238 F.Supp. 779, 784 (M.D.Ga.1965), aff'd sub nom. Wells v. Reynolds, 382 U.S. 39, 86 S.Ct. 160, 15 L.Ed.2d 32 (1965).

█ Finally, there has been no showing of irreparable harm. While there was some testimony that there has been a curtailment of civil rights activity, it has not been shown that this has been caused by the prosecution of plaintiffs or that an injunction will affect matters. There has been no showing of a falloff in membership, in applications for membership, or in contributions. Nor has there been any seizure of vital records and documents, as in *Dombrowski,* so as to paralyze NECAP's operations. In short, there has been no showing that plaintiffs will not adequately be protected by awaiting the state court's disposition of the matter. As in *Wells,* no plaintiff is in jail, or being deprived of any defense, and plaintiffs merely wish a determination here of a constitutional question which should first be considered by the state court. The foregoing shall constitute the findings and conclusions of the court.

The prayer for injunctive relief is in all respects denied. The action is dismissed.