John BARBER, George Foster-Bey, King L. Davis, Christine Rutherford, Johnie Smith, and Joseph D. Williams, Plaintiffs,

and

Ronald M. Weaver, Intervening Plaintiff.

v.

George B. KINSELLA, Mayor of Hartford, Elisha C. Freedman, City Manager of Hartford, John J. Kerrigan, Chief of Police of Hartford, Benjamin Goldstein, Captain of the Hartford Police, Daniel E. Lynch, Chief Prosecutor of the 14th Circuit Court, and John D. LaBelle, State's Attorney for Hartford County, Defendants.

Civ. No. 12184.

United States District Court
D. Connecticut.
Nov. 24, 1967.

George D. Stoughton, Asst. State's Atty., Hartford, Conn., for John D. La-Belle.

Mark Gassner, Hartford, Conn., Robert L. Carter, Lewis M. Steel, Richard F. Bellman, New York City, for plaintiffs and intervening plaintiff.

Howard H. Orenstein, Sydney, T. Schulman, Hartford, Conn., for George Foster-Bey.

Peter L. Costas, Hartford, Conn., for Connecticut Civil Liberties Union.

Richard M. Cosgrove, Leo C. Mazotas, Hartford, Conn., for George B. Kinsella, Elisha C. Freedman, John J. Kerrigan, and Benjamin Goldstein.

Francis M. McDonald, Waterbury, Conn. and John Rose, Jr., New Haven, Conn., for Daniel Lynch.

John D. LaBelle, State's Atty., Hartford, Conn., pro se.

Before SMITH, Circuit Judge, and BLUMENFELD and CLARIE, District Judges.

## MEMORANDUM OF DECISION ON MOTION FOR TEMPORARY RESTRAINING ORDER

J. JOSEPH SMITH, Circuit Judge:

This is a civil action before a 28 U.S.C. § 2281 three-judge court in which the plaintiffs allege unconstitutionality and unconstitutionally discriminatory application of Sections 53–44 [1] and 53–174 [2] of

---

[1] § 53–44. Inciting injury to persons or property

Any person who, in public or private, orally, in writing, in printing or in any other manner, advocates, encourages, justifies, praises, incites or solicits the unlawful burning, injury to or destruction of any public or private property or advocates, encourages, justifies, praises, incites or solicits any assault upon any organization of the armed forces of the United States, as defined by section 27–103, or of this state, as defined by section 27–2, or the police force of this or any other state or upon any officer or member thereof, or the killing or injuring of any class or body of persons, or of any indi-

vidual, shall be fined not more than five thousand dollars or imprisoned not more than ten years or both. (1949 Rev., § 8382; 1957, P.A. 163, § 45.)

[2] § 53–174. Breach of the peace. Intimidation. Libel

Any person who disturbs or breaks the peace by tumultuous and offensive carriage, noise or behavior, or by threatening, traducing, quarreling with, challenging, assaulting or striking another, or disturbs or breaks the peace, or provokes contention, by following or mocking any person, with abusive or indecent language, gestures or noise, or, with intent to frighten any person, threatens to com-

the Conn. General Statutes, and Sections 32–4 [3] and 32–5 [4] of the Municipal Code of the City of Hartford, with a consequent "chilling" effect upon the exercise of First Amendment rights by the classes whom the plaintiffs represent—in general, Negro citizens of Hartford.

Plaintiffs are Negro citizens of Hartford, and most of them are active participants in or leaders of the Black Caucus, a "loosely structured civil rights organization in Hartford." They all sue on behalf of themselves, all members and supporters of the Black Caucus, and all Negro residents of Hartford similarly situated, classes too numerous to bring before the court. Plaintiff George Foster-Bey also sued on behalf of all members of the Hartford Branch of the NAACP. Foster-Bey has been permitted to withdraw as a party plaintiff and intervenor Ronald M. Weaver to intervene on behalf of the same class. The action is brought pursuant to Rule 23, Fed.Rules Civ. Proc.; plaintiffs say they will fairly and adequately protect the interest of each class which they represent.

The defendants are George B. Kinsella, Mayor of Hartford; Elisha C. Freedman, City Manager of Hartford; John J. Kerrigan, Chief of Police of Hartford; Benjamin Goldstein, Captain of the Hartford Police; Daniel E. Lynch, Chief Prosecutor for the 14th Circuit Court of Connecticut; and John D. LaBelle, State's Attorney for Hartford County. Each defendant is sued individually and in his official capacity; Kerrigan and Goldstein are also sued as representatives of the class of police officers of Hartford, a class too numerous to bring before the court.

Plaintiffs allege that defendants, under color of Connecticut statutes and Hartford ordinances, have entered into a plan of joint action to subject the plaintiffs to the deprivation of Constitutional rights, privileges and immunities; that pursuant to this plan the defendants have prosecuted and intend to continue prosecuting plaintiffs, etc. under the named statutes and ordinances; that defendants or some of them have attempted to institute prosecution of plaintiffs, etc. by alleging that they had violated the statutes and ordinances, or some of them, and that these acts were initiated by police officers under the control of defendants or some of them, and were without any basis in fact.

In this action, plaintiffs seek injunction against the enforcement of Sections 53–44 ("Inciting Injury to Persons or Property") and 53–174 ("Breach of the Peace. Intimidation. Libel") of the Connecticut General Statutes, and of Sections 32–4 and 32–5 of the Municipal Code of the City of Hartford, declara-

mit any crime against him or his property or writes or prints and publicly exhibits or distributes, or publicly exhibits, posts up or advertises, any offensive, indecent or abusive matter concerning any person, shall be fined not more than five hundred dollars or imprisoned not more than one year or both. (1949 Rev., § 8518.)

3. § 32–4. Acts tending to obstruct streets, etc. unlawful; malice.

It shall be unlawful for a person to commit any act which violates the provisions of this Code or of any ordinance of the City or rule or regulation of any officer thereof authorized by law to make such rule or regulation, relating to the obstruction of the streets and sidewalks or the interruption of free passage along the same, or to aid, advise, abet or encourage the commission of any such act. Any such act shall be deemed malicious if repeated or continued after the person committing such act has been forbidden to repeat or continue the same.

4. § 32–5. Authority of city officers to keep streets, etc. clear; resisting officers.

Every executive or police officer of this city shall have authority to keep the streets and public places of the city open and free from obstruction, and to require all persons unlawfully obstructing such streets and public places to desist therefrom whenever the act of obstruction is done in view of such officer. It shall be unlawful for any person to resist, molest, disobey, or interfere with any executive or police officer, or the director of public works or his agent, while such officer or agent is engaged in the performance of the duty of keeping the streets or public places of the city free from obstruction and convenient for public use.

tion of the invalidity of the sections as repugnant to the Constitution of the United States and related relief.

Intervenor Ronald M. Weaver moves for a temporary restraining order, enjoining defendants, the Hartford Mayor, City Manager, Chief of Police, Police Captain Goldstein, the chief prosecutor of the state 14th Circuit Court and the State's Attorney for Hartford County; from continuing to incarcerate him under the inciting to injury and breach of the peace sections of the statutes.

Assuming without deciding at this stage of the action that this court has jurisdiction under 42 U.S.C. § 1983 to enjoin the prosecution already begun of Weaver in the state courts in spite of the prohibition of 28 U.S.C. § 2283 against federal injunctions of state court proceedings,[5] we hold that Sections 53–44 and 53–174 of the Conn.Gen.Stats. are not unconstitutional on their face, and that they have not been shown to have been unconstitutionally discriminatorily applied in Weaver's case.

Weaver was arrested on September 19, 1967 for violation of Sections 53–44 and 53–174 of the Connecticut General Statutes. Bail was set at $25,000, later reduced to $2,000 in the 14th Circuit Court. He is held pending trial in default of bail.

Following complaints against the Hartford police for conduct alleged to discriminate against Negro citizens, a pro-test march of about 100 people was organized on September 18, 1967 by a group known as the Black Caucus, including most of the plaintiffs, to march from the Negro section in the North End of Hartford to a white section in the South End, ostensibly to protest housing discrimination. A group of 300 or 350 whites gathered in the South End on a sidewalk along the proposed line of march. This group was reported to be armed, although the police did not observe any arms in their possession.

Police accompanied the marching group. In the course of the march, although Barber attempted to form the marchers in two orderly lines, bottles and stones were thrown, striking two of the officers and one civilian seated in a car. A line of officers attempted to halt the marchers, and Barber was arrested for breach of the peace for attempting to lead the marchers through the police line. He was placed under bond of $25,000, which was reduced in Circuit Court to $2,000 without surety and he was released September 21 on his own recognizance pending trial.

The following evening, September 19, 1967, stores were being broken into and looting taking place in the North End of Hartford. A number of police were in the area. At about 9 o'clock, near the corner of Wooster and Canton Streets in the North End, a small crowd gathered and were addressed by plaintiffs Weaver

5. The reach of the doctrine of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) is not yet clear—the action of the Supreme Court in remanding in Cameron v. Johnson, Gov. of Mississippi, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715 (1965), would seem to indicate that it extends quite far, perhaps to all cases where there is a serious allegation that a statute as applied is an unconstitutionally broad regulation of speech, being applied to discourage civil rights activities. On the remand, at D.C., 262 F.Supp. 873, the three-judge Court in Cameron again denied an injunction; this action has been appealed to the Supreme Court. (See 21 Rutgers L. Rev. 92, 129 (1966).)

One question which will almost certainly be decided in the Supreme Court's next opinion in Cameron is whether or not 28 U.S.C. § 2283 operates to bar a federal injunction of state court proceedings in a case where plaintiffs rely on 42 U.S.C. § 1983, which gives the right to a civil action for deprivation of civil rights. The Fourth Circuit has held that it does; Baines v. City of Danville, 337 F.2d 579 (4 Cir. 1964), cert. den. 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702 (1965). The District Court in Ware v. Nichols, 266 F.Supp. 564 (N.D.Miss. 1967) avoided the problem by declaring a statute unconstitutional on its face and then expressing its opinion that that would be adequate relief, since it could be assumed that the state authorities would not proceed to prosecute, etc. under an unconstitutional statute.

and Foster-Bey, who advised the crowd that they had a right to be there, that the police could do nothing about it, but must give them protection. Weaver called on the crowd to follow him. During the speeches bricks, bottles and stones were thrown at police officers, one of whom was struck on the head by a brick. The officers took shelter behind their cruisers, then dispersed under the attack and retreated to Main and Canton Streets, a block from Wooster and Canton.

Weaver and Foster-Bey led the crowd up Canton, beckoning them on. Missiles were being thrown from the group. Weaver and Foster-Bey proceeded to Main and Canton, the crowd stopping some 15 or 20 feet behind them. Weaver and Foster-Bey were arrested for inciting to riot and breach of peace. Bond was set for Foster-Bey at $25,000, reduced by the Circuit Court to $5,000, and he was released two days after arrest on his own recognizance in the amount of $2,000. The inciting to riot charge against Foster-Bey was nolled.

In the opinion of some of those active in the Black Caucus and the NAACP, the arrests have discouraged support for the organizations and participation in demonstrations. However, the proof at the hearing on the motion does not indicate that there was any substantial discouragement, either up to the time of the arrests or thereafter. Demonstrations have continued, with no further arrests, and have received police protection, including open housing demonstration marches, one to the South End.

Intervening plaintiff Weaver is the only plaintiff who was not released without cash bail. His police record, considered by the Circuit Court in requiring bail, shows a number of arrests and convictions, and two rearrests for failure to appear while on bail.

It is Weaver's contention that the statutes invoked against him are unconstitutional on their face, that the application of them to him is discriminatory and that the application of the statutes and ordinances (also claimed to be un-

constitutional on their face) has been in a manner to chill the First Amendment rights of Weaver and others to free speech. See Dombrowski v. Pfister, supra, n. 5.

■ The first claim we must reject. Section 53–44 has recently been upheld as constitutional by this court in Turner v. LaBelle, 251 F.Supp. 443 (D.Conn. 1966) and Section 53–174 in an earlier case, Watch Tower Bible and Tract Society v. City of Bristol, 24 F.Supp. 57 (D.Conn.), affirmed per curiam 305 U.S. 572, 59 S.Ct. 246, 83 L.Ed. 361 (1938).

Weaver urges a reconsideration of the question, and claims support in the opinions in three recent three-judge District Court civil rights cases: Ware v. Nichols, 266 F.Supp. 564 (N.D.Miss.1967); Carmichael v. Allen, 267 F.Supp. 985 (N.D. Ga.1967); and Baker v. Bindner, 274 F.Supp. 658 (W.D.Ky. Oct. 13, 1967).

The plaintiffs in Ware v. Nichols were Negro citizens of Mississippi, who had been arrested and charged with violating the Mississippi Criminal Syndicalism Act; they asked for and received a summary judgment declaring the Act unconstitutional on its face. The heart of the holding was expressed as follows, 266 F.Supp. at 568: "The statute here purports to reach speech of a character beyond the sphere of criminal incitement." The Court noted that, as in Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967), the act apparently included mere advocacy of abstract doctrine.

Section 53–44, Conn.Gen.Stats., is certainly less broad than the Mississippi statute struck down in *Ware*, and it cannot fairly be read to reach speech of a character beyond criminal incitement, in the manner of the Mississippi statute.

In Carmichael v. Allen, the plaintiffs sought a judgment declaring unconstitutional Georgia's riot statute, portions of the Georgia code dealing with "insurrection", and the disorderly conduct ordinance of the City of Atlanta.

The Georgia code made unlawful "insurrection, or an attempt to incite in-

surrection," and provided the death penalty (unless the jury should recommend mercy) for those convicted of either offense; "circulating insurrectionary papers" was also made unlawful, with less severe penalties. Section 26–902 read: "Any attempt, by persuasion or otherwise, to induce others to join in any combined resistance to the lawful authority of the State shall constitute an attempt to incite insurrection." This section was declared unconstitutional in Herndon v. Lowry, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066; nonetheless, the state had undertaken to prosecute persons under the insurrection statutes within the past few years. The section defining insurrection was held in *Carmichael* to provide no more acceptable standards than did Sec. 26–902, accordingly it and the section providing punishment for violations were struck down. The section dealing with "circulating insurrectionary papers", being keyed to § 26–902, was also struck down as too broad and vague. [The Court abstained from determining the validity of the Georgia riot statute, which is not addressed to expression.]

It is clear that the Georgia insurrection statutes struck down in *Carmichael* were much broader and more certainly restrictive of speech than § 53–44, Conn. Gen.Stat.

In Baker v. Bindner, the Court struck down as unconstitutional Kentucky statutes relating to "criminal syndicalism", conspiracy, and vagrancy, and City of Louisville ordinances dealing with parade permits, disorderly conduct, and loitering. The holdings as to the "criminal syndicalism" statute and the disorderly conduct ordinance are directly relevant to this case.

The "criminal syndicalism" statute provided:

> Any person who commits, aids or counsels any crime, physical violence, destruction of property, intimidation, terrorism or other unlawful act or method to accomplish any political end or to bring about political revolution shall be [punished.]

This was held unconstitutional on the ground that it made criminal "counselling" an unlawful method to accomplish a political end. The Court thought that this brought it under the holding in Keyishian v. Board of Regents, supra, that a state cannot outlaw the mere advocacy of abstract doctrine.

The use of the words "justifies" and "praises" in § 53–44, Conn.Gen.Stat., could be said to have the same effect, but it is much more reasonable to read them, as this court did in Turner v. LaBelle, as applicable only to the inciting and encouraging of burning, injury and destruction, etc. It can fairly be said that the reach of a "criminal syndicalism" statute such as Kentucky had enacted is intended to be broader than the intended reach of § 53–44. We adhere to our holdings in Turner v. La-Belle and Watch Tower Bible and Tract Society v. City of Bristol that the sections of the Connecticut statutes here under attack are not unconstitutional.

■ The second claim, based on alleged discriminatory application of the statutes and denial of bail to Weaver, must also be rejected on the facts developed on the motion. Whether or not Weaver is eventually found guilty of violation of either Section 53–44 or Section 53–174, we cannot say that the police were without probable cause to arrest and accuse him on those counts in view of the riotous conduct of the crowd on the night of September 19, and Weaver's apparent leadership in the threatening march toward the police line. It may well be, as plaintiffs appear to contend, that Weaver's intent was to calm rather than advocate further violence, but we have been provided no convincing proof that the police understood this to be so, or that the police were unwilling to allow and protect peaceful demonstrations and marches to protest North End conditions. In fact the proof is quite the contrary in view of the later demonstrations which were allowed and protected.

If discrimination is claimed on a difference between the treatment of the North End and South End groups the night of

the 18th it is sufficient answer that one engaged in actual violence, the other did not.

Nor are we convinced on this record that any purposeful discrimination is shown by the failure to release Weaver without bond, all others arrested on similar charges having been released, or to bring him to trial sooner. He was arrested at night September 19. A special public defender was appointed for him by the court on September 20 and he was advised of his rights. Question was raised as to his mental condition and continuances had for examination. The first two psychiatrists to examine him disagreed as to his condition; a third considered him not committable. The state was ready to proceed with the prosecution when the instant motion to intervene in this action and for temporary restraining order was filed on October 31, 1967.

Nor has there been any showing thus far in the case that the application of the allegedly unconstitutional ordinances against others than Weaver, results from any scheme to suppress the rights of Weaver or others, or, if they are indeed invalid, that their present invalidation would affect the case of the movant Weaver.

On these facts, we cannot say that Weaver has established the right to relief restraining the police and prosecuting officials from proceeding with the trial of the charges lodged against him.

■ Of course, any arrest and prosecution of demonstrators will have some chilling effect on the willingness of those arrested and others to engage in unruly demonstrations, but if the prosecutions are undertaken in good faith and on probable cause and not for the purpose of discouraging legitimate demonstrations, interference by the federal courts with the state criminal process is not required or permitted. In *Dombrowski,* as in cases following it, the state prosecution was a sham availed of for the purpose of stifling protest. We find no such purpose here.

The above may serve as findings of fact and conclusions of law. The application for temporary restraining order is denied.