Susan DOE et al., Plaintiffs,

v.

Duke DUNBAR, Attorney General for the State of Colorado, and Mike McKevitt, District Attorney for the 2d Judicial District, Floyd Marks, District Attorney for the 17th Judicial District, Defendants.

Civ. A. No. C–2402.

United States District Court,
D. Colorado.

Dec. 22, 1970.

Howard B. Gelt and Richard D. Lamm, Henry W. Toll, Jr., Charles Frederickson, and Tom Lamm, Denver, Colo., for plaintiffs.

Duke W. Dunbar, Atty. Gen., of Colo., pro se.

John P. Moore, Deputy Atty. Gen., and Eugene C. Cavaliere, Asst. Atty. Gen., Denver, Colo., for Duke Dunbar.

James D. McKevitt, Dist. Atty., for the Second Judicial District, pro se.

Tom Casey, Deputy Dist. Atty., Denver, Colo., for Mike McKevitt.

Floyd Marks, Dist. Atty., for the 17th Judicial District, pro se.

Harlan R. Bockman, Asst. Dist. Atty., Commerce City, Colo., for Floyd Marks.

Before LEWIS, Chief Circuit Judge, ARRAJ and CHILSON, District Judges.

## MEMORANDUM OPINION AND ORDER

ARRAJ, District Judge.

Plaintiffs brought this action seeking a declaration that Colorado's abortion statute is unconstitutional and a permanent order enjoining defendant officials from enforcing the statute. Because a substantial question was raised concerning the constitutionality of a state statute, a three-judge court was convened pursuant to 28 U.S.C. § 2281 (1964). Defendants have moved to dismiss on two grounds: this court lacks jurisdiction because there is no case or controversy within the meaning of Article III of the Constitution and the amended complaint fails to state a claim for injunctive relief.

### I.

In order properly to frame the parties' arguments concerning the case or controversy requirement of Article III, it is first necessary to describe Colorado's abortion statute and the relationship to it of the several groups of plaintiffs in this action.

Colorado's therapeutic abortion act, Colo.Rev.Stat.Ann. § 40-2-50 et seq. (Supp.1967), provides a single procedure for the legal termination of pregnancies in Colorado. A woman desirous of obtaining an abortion must apply to a special hospital board consisting of three physician-members entrusted with deciding whether an applicant is entitled to an abortion on one of the grounds specified in the statute. If all of the board members certify in writing that she is so entitled, a woman may then have an abortion performed in an accredited hos-

pital by a licensed physician using accepted medical procedures. The grounds for obtaining a justified medical termination include the following: the pregnancy resulted from rape; continuation of the pregnancy, in the opinion of the board, is likely to result in the death of the woman, the serious impairment of her physical health, or the serious and permanent impairment of her mental health (this must be confirmed in writing by a psychiatrist); or the child is likely to be born physically deformed or mentally retarded. The statute further provides that any person who intentionally ends or pretends to end a pregnancy other than by live birth or the procedure provided in the statute is guilty of a felony punishable by not less than three nor more than ten years in the state penitentiary and by a fine not exceeding $2,000.

Plaintiffs in this action are women and doctors who reside in Colorado. Three of the Does, Alice, Joan and Mary, allege that they have attempted in the past to obtain abortions in Colorado, have been told by doctors that they could not qualify under Colorado law and therefore obtained either illegal abortions in Colorado or legal abortions outside the state. Alice, Joan and Mary are not now pregnant and do not seek damages for any harm which may have occurred in the past. They join in the present action on behalf of themselves and others who have been or may become pregnant. Jane and Susan Doe are unmarried women who were in the eighth week of pregnancy when this suit was filed. Each alleges that she asked a Colorado physician to perform an abortion and that the physician refused on the ground that to do so would violate Colorado law.

The eight doctor-plaintiffs practice medicine in Colorado. In the regular course of their practices, seven of the doctors continuously receive requests for abortions and do perform two or three abortions each month in accordance with the requirements of the Colorado therapeutic abortion act. They assert that but for the statute they would perform many more abortions each month. The eighth doctor is a psychiatrist who does not himself perform abortions but who continuously receives requests to confirm, as required by statute, that continuation of certain pregnancies will result in serious and permanent impairment of mental health. The psychiatrist claims that there are no accepted medical standards for making such a judgment.

■ The United States Supreme Court has described the case or controversy doctrine as expressing two limitations upon the power of Article III courts. The first limitation is based upon the policy of separation of powers and prohibits us from treading in areas preserved for other branches of government. Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). The second is that Article III courts may decide only those questions "presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Id.* Defendants do not contend that the issues raised in this litigation are political. They do argue, however, that the interests of the plaintiffs in the constitutionality of Colorado's abortion statute are merely hypothetical since none of the plaintiffs alleges that he or she has engaged in conduct prohibited by the statute or that any of the defendants has threatened prosecution or has prosecuted any of the plaintiffs for violation of the statute. For these reasons, defendants maintain, the suit is abstract; it lacks that "exigent adversity" which Article III requires.

■ The adversity requirement may be described as a prohibition against rendering advisory opinions. Flast v. Cohen, *supra*, at 96–97, 88 S.Ct. at 1950–1951. Whether the problem presented here be discussed as one of standing or of ripeness, two confusingly similar aspects of the case or controversy requirement, our inquiry is whether the relationship of the parties to the issues is sufficiently definite to make judicial resolution appropriate. The fact

that this is a declaratory judgment action does not mean that the Article III requirements are less rigorous. Poe v. Ullman, 367 U.S. 497, 507, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1960). We agree with defendants that the interests of Alice, Joan and Mary Doe are hypothetical. The sole connection they assert with this litigation is the fact that they may in the future become pregnant. This does not distinguish their interest from that of every other woman in Colorado who is capable of bearing children. These plaintiffs do not complain that they have been injured, nor does it appear that there is any present threat of injury to them from enforcement of the Colorado abortion statute. The psychiatrist's situation is similar. He does not allege that he has performed or intends to perform abortions or that but for the Colorado statute he would do so. It is therefore difficult to imagine how he would be injured by enforcement of the act. As to these persons, any decision we might render would surely be advisory.

■ Defendants appear to recognize that seven of the doctor-plaintiffs and the women who are now pregnant do have a stronger interest in this litigation than do those plaintiffs mentioned above, but they point out that none of the plaintiffs is engaged in conduct proscribed by the statute or is threatened with prosecution which it would be appropriate for this court to enjoin. Defendants' argument is, in effect, that one who wishes to challenge the constitutionality of criminal legislation must first disobey the law and run the risk of prosecution in order to question the validity of the law. The Supreme Court has not, to our knowledge, ever adopted such a harsh and absolute requirement. In fact, the court has held by necessary implication that it is not deprived of jurisdiction on direct appeal merely because the plaintiff in a declaratory judgment action has not disobeyed the challenged statute or has not been directly threatened with prosecution. Epperson v. Arkansas, 393 U.S. 97, 101–102, 89 S. Ct. 266, 21 L.Ed.2d 228 (1968). The scope of the court's holding in *Epperson* is difficult to ascertain because the majority does not discuss the case or controversy problem. Nevertheless, the fact that the court decided the case on its merits can mean no less than that a specific and immediate threat of enforcement is not a constitutional requirement in a declaratory judgment action.

■ While the many Supreme Court decisions which both defendants and plaintiffs have cited may not be entirely reconcilable, we can discern several considerations which the court has taken into account in judging whether there exists a case or controversy within the meaning of Article III. While there need not be a threat of immediate prosecution, it should nevertheless not appear that the state maintains a policy of non-prosecution which might render any decision unnecessary and even inappropriate. *Compare* Poe v. Ullman, 367 U. S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), *with* Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958); *but see* Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968). Furthermore, there should not be any substantial question concerning the scope or meaning of the statute in question or the manner of its enforcement, lest a decision prior to prosecution for specific acts take on an abstract or hypothetical character. United Public Workers of America v. Mitchell, 330 U. S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). Finally the Supreme Court has taken into account the possible harm which could befall a plaintiff forced to run the risk of prosecution in order to state his claim. *See* Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).

■ We have discovered no record of prosecutions for violation of the therapeutic abortion act, which was adopted in 1967, but there are numerous decisions concerning prosecutions of physicians and non-physicians for violation of the earlier abortion statute, Colo.Rev. Stat.Ann. § 40–2–23 (1963), and its

predecessors. *E.g.*, Hall v. People, 119 Colo. 141, 201 P.2d 382 (1948); Polly v. People, 107 Colo. 6, 108 P.2d 220 (1940); Willis v. People, 73 Colo. 369, 215 P. 854 (1923); Marmaduke v. People, 45 Colo. 357, 101 P. 337 (1909); Fitch v. People, 45 Colo. 298, 100 P. 1132 (1909); Clarke v. People, 16 Colo. 511, 27 P. 724 (1891); Dougherty v. People, 1 Colo. 514 (1872). At least as to the physicians in this litigation, we can state with some confidence that Colorado has not pursued a policy of non-enforcement of its abortion laws. Furthermore, it appears that the present abortion statute, discussed above, is relatively clear in meaning and unlikely to be given varying interpretations. The conduct prohibited by the statute is ending or pretending to end a pregnancy except by live birth unless termination has been approved by a hospital board. Were the plaintiffs in this action seeking to invalidate a particular part of the statute or were they questioning the constitutionality of a part as applied to them, the problem of deciding an abstract or hypothetical issue might arise. However, plaintiffs seek to have the entire statute declared unconstitutional and void. Because there is little, if any, question about the manner in which the therapeutic abortion statute will be construed and applied, it does not appear to us that the issues in this litigation would be more justiciable were they raised in a defense to a criminal prosecution. We also note the hardship to these doctors of requiring that they test their claims in a criminal prosecution. They would be forced to risk their careers, their livelihoods and their freedom. We think this would be a high and unnecessary price to require. Finally, it seems to us that the physicians in this suit are well qualified to litigate the issues raised. They are in close and essential contact with women seeking abortions; the integrity of their practice of medicine is, as they see it, at stake; and their interest in the problems presented here is a continuing one. Any question as to whether they would be entitled to make a so-called third-party claim was resolved by the Supreme Court in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

This controversy is surely no more hypothetical with respect to the plaintiffs who are pregnant than it is with respect to the seven doctors. We also believe that consideration of hardship favors permitting Jane and Susan Doe to maintain this action. It may be argued, however, that Colorado has never enforced its abortion laws against women and that therefore Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), requires that the claims of Jane and Susan Doe be dismissed. This argument has merit. We have found no Colorado cases in which a pregnant woman has been prosecuted for terminating her own pregnancy or procuring such a termination. This does suggest a policy of nonenforcement. However, the therapeutic abortion act, which expanded considerably the grounds for obtaining a legal abortion, was adopted only three years ago and we lack any evidence as yet on the enforcement policy which Colorado prosecutors will pursue. Since it is now much easier for a woman to obtain an abortion, prosecutors may decide to be less lenient toward those women who disobey the law. In the absence of certain knowledge that the state will not prosecute women, we believe the wiser course is to permit Jane and Susan Doe to participate in this lawsuit and to express their strong interest in the resolution of the issues presented. Poe v. Ullman, *supra*, certainly does not compel a contrary holding. There the court found a policy of non-enforcement of a statute which had been on the books for three quarters of a century with but a single test-case prosecution which had been dismissed. As we understand Poe v. Ullman, what the court requires is a clear finding of non-enforcement, a finding which we are unable to make in this case. Furthermore, the Supreme Court's subsequent decision in Epperson v. Arkansas, 393

U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), in which the court struck down a statute with no record of enforcement, casts some doubt upon the present vitality of Poe v. Ullman.

## II.

■ Defendants further assert that the complaint against them must be dismissed for failure to state a claim upon which injunctive relief can be granted. As was stated earlier in this opinion, plaintiffs seek a declaratory judgment as well as injunctive relief. It is our duty to decide the merits of plaintiffs' request for a declaratory judgment irrespective of whether they may be entitled to injunctive relief. Zwickler v. Koota, 389 U.S. 241, 254–255, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Should plaintiffs prevail on their prayer for a declaratory judgment, it will then be time for this court to decide whether an injunction is "necessary and appropriate." *Id.* at 255, 88 S.Ct. at 399. We intimate no view on either of these questions.

## III.

■ In various paragraphs of their complaint, plaintiffs refer to the duties and activities of special hospital boards, which are authorized by Colorado's therapeutic abortion act to determine those cases in which a medical termination of pregnancy is justified. Defendants have moved to strike these paragraphs and references in accordance with Rule 12(f) of the Federal Rules of Civil Procedure on the grounds that the paragraphs are immaterial and prejudicial and concern conduct of persons who have not been made defendants in this lawsuit. Defendants assert that they should not be called upon to defend the conduct of special hospital boards.

Rule 12(f) permits a federal court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Plaintiffs allege, among other things, that the Colorado legislature's delegation of authority to special hospital boards is unconstitutional. They further assert that the boards' failure to grant hearings to applicants is a denial of due process of law. We are unable to agree that these allegations are immaterial.

The gravamen of defendants' objection appears to be that they cannot be held responsible for the conduct of special hospital boards. There might be merit to this contention were the issue in this case some facet of board conduct which it would be appropriate for us to enjoin. However, plaintiffs are attacking the entire scheme of Colorado's abortion statute. The duties and activities of special hospital boards are but one reason for plaintiffs' assertion that the statute is unconstitutional. Defendants are officers charged with enforcing the statute. The issue is not whether defendants are responsible for the conduct of all persons connected with the statute, any more than whether defendants are responsible for the statute itself. The issue is simply whether the officers have some connection with the enforcement of the act. Ex parte Young, 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Defendants in this case do not deny such a connection.

For the foregoing reasons, it is

Ordered that defendants' motion to dismiss the claims of Alice, Joan and Mary Doe and H. G. Wittington, psychiatrist, be and the same hereby is granted and that defendants' motion to dismiss the claims of all other plaintiffs be and the same hereby is denied; and, further, that defendants' motions to strike and to dismiss for failure to state a claim upon which injunctive relief can be granted be and the same hereby are denied.

CHILSON, District Judge.

I do not concur in the decision of the majority to exercise jurisdiction of this action at this time. It is my opinion that we should abstain and stay these proceedings to permit the plaintiffs to obtain a determination of the validity or invalidity of the abortion statutes by the courts of the State of Colorado. By ab-

staining, the need to consider the federal constitutional questions raised by plaintiffs may be obviated for the reasons set forth below.

The complaint, as amended, alleges that the abortion statutes violate several provisions of the federal Constitution, principally:

The First Amendment, guaranteeing freedom of speech;

The Fourth Amendment relating to privacy and prohibiting unreasonable searches and seizures;

The Fifth Amendment, against self incrimination;

The Eighth Amendment, prohibiting cruel and unusual punishment;

The Fourteenth Amendment guaranteeing due process of law.

The Bill of Rights set forth in the Constitution of the State of Colorado also provides for:

Freedom of speech; (Art. II Sec. 10); Protection of privacy and freedom from unreasonable searches and seizures in terms; (Art. II Sec. 7);

Prohibition against self incrimination; (Art. II Sec. 18);

Prohibition against cruel and unusual punishment (Plaintiffs allege denial of an abortion under the challenged statute constitutes "cruel and unusual punishment" in many cases); (Art. II Sec. 20);

Requirement of due process; (Art. II Sec. 25).

Consequently, the plaintiffs' attack on the abortion statutes necessarily raises questions of the validity of these statutes under the state Constitution as well as under the federal Constitution.

The validity and construction of the abortion statutes as amended in 1967 have not been presented to the courts of the State of Colorado; the questions of their validity or invalidity under the Colorado Constitution are unsettled and are enmeshed with the federal questions raised by the plaintiffs. Since the state questions are so closely linked to the federal questions, and since the determi-

nation of the state questions may eliminate the necessity of reaching the federal questions, I conclude that Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970) requires that we abstain from exercising jurisdiction in this case for a reasonable time to permit plaintiffs to repair to the state courts for a resolution of the state constitutional questions.

Since the majority of the Court has determined to exercise jurisdiction and to hear the case on its merits, I concur with the disposition made by the majority of the defendants' motions to dismiss and strike.