William C. ANDERSON and Guy B. Nutter, on behalf of themselves, and all those similarly situated, Plaintiffs,

v.

Thomas VAUGHN, Chief of Police of the City of Hartford and Cornelius J. Shea, Chief Prosecutor, Fourteenth Circuit Court, Defendants.

Civ. No. 14094.

United States District Court,
D. Connecticut.

May 18, 1971.

Steven H. St. Clair, West Hartford, Conn. (Marjorie Gelb and Paul R. Rice, West Hartford, Conn., of counsel), for plaintiffs.

John M. Fitzgerald, Corp. Counsel, Hartford, Conn. (Richard M. Cosgrove, Deputy Corp. Counsel, and Cornelius J. Shea, Hartford, Conn., of counsel), for defendants.

Carl D. Eisenman, Hartford, Conn., on the brief for Committee on Veteran's and Servicemen's Affairs, as amicus curiae.

Before SMITH, Circuit Judge and BLUMENFELD and CLARIE, District Judges.

## MEMORANDUM OF DECISION

J. JOSEPH SMITH, Circuit Judge:

This is an action brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343 seeking a declaration of the constitutional invalidity of a Connecticut statute which makes it a criminal offense for a person to "carry or display a red flag or any other emblem as a symbol calculated to, or which may, incite people to disorders or breaches of the law." [1] Since the constitutional validity of a state statute was at issue, a three-judge federal district court was convened pursuant to 28 U.S.C. §§ 2281, 2284.

■ We first consider the problem of whether this case is properly before this court in light of the Supreme Court's recent decisions in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669; Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696; Samuels v. Machell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed. 2d 688 and Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (February 23, 1971). After a careful reading of these opinions, we conclude that they are not controlling since there are no criminal prosecutions pending against the

plaintiffs Anderson and Nutter, or the class they represent. The opinion by Mr. Justice Black in *Younger* draws its own line: "We express no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun." 401 U.S. at 41, 91 S.Ct. at 749. All of the other Justices state, in a variety of ways, that the *Younger* and *Boyle* decisions establish only "the proper policy to be followed by a federal court when asked to intervene * * * in a criminal prosecution which is *contemporaneously pending* in a state court." (emphasis added). [Concurrence of Justices Stewart and Harlan in *Younger*, 401 U.S. at 55, 91 S.Ct. at 757].

The next question which arises, given the absence of any presently pending prosecutions, is whether the plaintiffs have presented a justiciable "case or controversy" within the definition of Article III of the Constitution. The two leading Supreme Court decisions in this regard are Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), and Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968). In *Poe*, a declaratory judgment action challenging Connecticut's birth control laws, the Court found a case or controversy lacking where the state had "an undeviating policy of nullification" of any attempts at the law's enforcement. More recently in *Epperson*, however, the Court struck down the Arkansas antievolution statute where there was no evidence to indicate its recent enforcement.

In the present case, there have been several arrests for violations of the red-flag statute in recent months. Various defendants and other law enforcement officials have otherwise indicated their intention to enforce the statute so long as it remains in force. A recent three-judge court has considered the case or

---

1. Connecticut General Statutes § 53-7:
   Any person who carries or displays a red flag or any other emblem as a symbol calculated to, or which may, incite people to disorders or breaches of the law, shall be fined not more than two hundred dollars or imprisoned not more than six months or both. This section has been repealed effective October 1, 1971.

controversy requirement in a slightly different context. In Doe v. Dunbar, 320 F.Supp. 1297 (D.Colo.1970), the plaintiffs sought a declaratory judgment as to the Colorado abortion statute, although there was no allegation that plaintiffs ever had or planned to violate this statute or had themselves been threatened with prosecution. The Court commented:

> While the many Supreme Court decisions which both defendants and plaintiffs have cited may not be entirely reconcilable, we can discern several considerations which the court has taken into account in judging whether there exists a case or controversy within the meaning of Article III. While there need not be a threat of immediate prosecution, it should nevertheless not appear that the state maintains a policy of non-prosecution which might render any decision unnecessary and even inappropriate. * * Furthermore, there should not be any substantial question concerning the scope or meaning of the statute in question or the manner of its enforcement lest a decision prior to prosecution for specific acts take on an abstract or hypothetical character. * * Finally the Supreme Court has taken into account the possible harm which could befall a plaintiff forced to run the risk of prosecution in order to state his claim. [citations omitted] 320 F.Supp. at 1300

■■ In these circumstances we are of the view that the plaintiffs ought not be forced to violate a law affecting their First Amendment rights and subject themselves to criminal prosecution in order to place the issue before a judicial forum. Forced exposure to criminal sanctions in order to test the validity of statutory limitations of First Amendment rights is irreparable injury of sufficient dimension to justify federal declaratory relief. See Perez v. Ledesma,

401 U.S. 82, 92, 91 S.Ct. 674, 681, 27 L. Ed.2d 701 (Brennan, J., dissenting).

■ We turn now to the merits of the plaintiffs' contentions. There is no question that the public display of a flag is "symbolic speech" and is entitled to the full protection of the First Amendment. Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931).[2] Moreover, this is not a situation like, for example, the draft card burning cases where elements of speech must be balanced against a legitimate government interest unrelated to expression, since the display of a flag such as is involved here is solely for the purpose of the communication of ideas. [Cf. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)]. The constitutional question before this court would be the same if the statute prohibited *speech* "which may incite people to disorders or breaches of the law" rather than the display of a flag or emblem. [See, generally, Emerson, The System of Freedom of Expression (1970)].

As the Supreme Court has noted repeatedly, no provision of our Constitution is entitled to a more preferred position than is the First Amendment, for it provides the cornerstone for a viable system of democratic government. One of the Court's most eloquent statements of this principle is contained in Mr. Justice Douglas' opinion in Terminiello v. Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949):

> Accordingly, a function of free speech under our system of government is to invite disputes. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconditions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute * * *

---

2. We do not have in this case any question of misuse of a flag or emblem which a statute purports to protect.

is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a substantive evil that rises far above public inconvenience, annoyance, or unrest. * * * There is no room under our Constitution for a more restrictive view. For the alternative would lead to standardization of ideas either by legislatures, courts, or dominant political groups. The ordinance as construed by the trial court seriously invaded this province. It permitted conviction of petitioner if his speech stirred people to anger, invited public dispute, or brought about a condition of unrest. A conviction resting on any of these grounds may not stand.

■ The state, of course, has a valid interest in preventing disturbance and controlling public order, but in carrying out these responsibilities its regulation must be drawn with sufficient specificity so that persons seeking to exercise their First Amendment rights, as well as those attempting to enforce the regulation, will know definitely what is being prohibited. The rule against overbreadth demands that the regulation be framed to cover only that conduct which is constitutionally subject to control and not embrace conduct protected under the First Amendment. Failure to meet this standard means that the regulation is void on its face, regardless of the validity of particular applications.

The Supreme Court decision most clearly on point is Cox v. Louisiana, 379 U.S. 536, 551, 85 S.Ct. 453, 462, 13 L.Ed.2d 471 (1965), where the Court invalidated a Louisiana breach of the peace statute, which prohibited congregating with others "with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned," on the grounds that it was "unconstitutionally vague in its overly broad scope." Likewise in Cantwell v. Connecticut, 310 U.S. 296, 308, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the Court found a similar breach of the peace statute constitutionally invalid because of the most "general and indefinite characterization, and leaving to the executive and judicial branches too wide a discretion in its application." [Cf. Edwards v. South Carolina, 372 U.S. 229, 237, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Chaplinsky v. New Hampshire, 315 U.S. 568, 573, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); Feiner v. New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295 (1951)].

■ Yates v. United States, 354 U.S. 298, 318, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1963) and Keyishian v. Board of Regents, etc., 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967), teach that only advocacy of action rather than advocacy of ideas may be restricted. Whether it is possible to draft a sufficiently narrow flag control statute to pass constitutional muster is a question we need not decide today. (See Barber v. Kinsella, 277 F.Supp. 72 (D.C.1967)). The statute now in effect which will expire October 1 (see n. 1) is not sufficiently narrow and we must find it invalid.

Since we find the Connecticut statute to be unconstitutional, there would appear to be no need for continued injunctive relief as we have no reason to believe that the Connecticut authorities will now continue its enforcement. The temporary restraining order issued by Judge Blumenfeld is therefore dissolved.

CLARIE, District Judge (dissenting):

I respectfully dissent. It is not the ordinary function of the federal courts to interfere with the orderly process of state criminal justice. Only where exceptional circumstances occur, which impose oppressive and restrictive measures designed to stifle protest and clearly invade the protected constitutional rights of self-expression, should this Court intervene. This is not that case. The statute under attack has been the law of this State for 52 years and no one has demonstrated its bad faith misuse or the present likelihood of its causing irreparable harm to the petitioners. The Con-

necticut courts should be given the first opportunity of deciding the statute's constitutionality, under the state and federal constitution. No less a judicial scholar than Chief Justice Burger himself recently commented in a similar matter, not involving first amendment rights:

"(I)t seems to me a very odd business to strike down a state statute, on the books for 40 years more or less, without any opportunity for the state courts to dispose of the problem either under the (State) Constitution or the U. S. Constitution." Wisconsin v. Constantineau, 400 U.S. 433, 440, 91 S. Ct. 507, 511, 27 L.Ed.2d 515 (Jan. 19, 1971 dissent).

The majority's action would strike down this statute as being unconstitutional on its face, completely divorced from any factual evidence likely to fully disclose the criminal conduct related to the pending state court prosecution. Such procedure severs from the Court's consideration the provocative conduct, which purportedly accompanied the public display of Viet Cong flags, at a location proximate to a state-wide political gathering, where the President of the United States was present.

The relevant part of this law, as applied to the facts in this case, is not controlled by the so-called traditional "red flag" statute, because the Viet Cong flags used here are not so described. That flag has a field divided horizontally red over blue, with a large yellow star in the center. It is clearly distinguishable from the flag of North Vietnam, which has a plain red field with a similar yellow star. The substance of the relevant part of the statute to be applied here, prohibits the public use and display of any emblem or symbol calculated to or likely to incite disorders and breaches of the peace.

The plaintiffs identify Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), as the only "red flag" case that has yet been decided by the Supreme Court. They point out that the Court in that instance overruled the California Supreme Court and held un-

constitutional, that part of the state statute, Penal Code, § 403a, which forbade the display of a red flag, "as a * * * symbol * * * of opposition to organized government," on the ground that it was overly broad and vague and infringed the right of free speech. However, they omit stating that the Court in that case did sustain the two relevant parts of that statute, which are applicable here. These sections made criminal the display of a red banner or other emblem to invite or stimulate anarchistic action (that is violent conduct) or to aid in revolutionary propaganda.

The Court said:

"There is no question but that the State may thus provide for the punishment of those who indulge in utterances which incite to violence and crime and threaten the overthrow of organized government by unlawful means. There is no constitutional immunity for such conduct abhorrent to our institutions. * * * *We have no reason to doubt the validity of the second and third clauses of the statute as construed by the state court to relate to such incitements to violence.*" (underscoring added) (At 368–369, 51 S. Ct. at 535).

This statute far from regulating mere speech prohibits conduct, that also involves a speech activity. The issue here is comparable to that in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), namely, whether in a situation where "speech" and "nonspeech" elements are combined in the same court of conduct, there exists a sufficiently important governmental interest in regulating the non-speech element to justify limitations on first amendment freedoms.

"We emphatically reject the notion urged by appellant that the First and Fourteenth Amendments afford the same kind of freedom to those who would communicate ideas by conduct such as patrolling, marching, and picketing on streets and highways, as these amendments afford to those who communicate ideas by pure speech.

\* \* \* We reaffirm the statement of the Court in Giboney v. Empire Storage & Ice Co., supra, 336 U.S. 490, at 502, 69 S.Ct. 684, 93 L.Ed. 834, that 'it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.' " Cox v. Louisiana, 379 U.S. 536, 555, 85 S.Ct. 453, 464, 13 L.Ed.2d 471 (1964).

The Connecticut law prohibits the public display of any emblem as a symbol calculated or likely to incite disorders or breaches of the law. The circumstances of each incident raise factual issues upon which evidence is required, in order to properly test the constitutionality of the law's application. By way of illustration, if one were to parade a Ku Klux Klan flag or other such emblem into an NAACP meeting it would quite likely provoke a riotous reaction; or to publicly carry a Nazi flag into a synagogue would certainly be calculated to incite disorder; or to display a Viet Cong flag at a political gathering of loyal Americans might well be calculated to provoke an incitement to violence. Contrary conclusions would be both unreal and naive. It is just such conduct that the State Legislature intended to regulate in the interest of public peace and tranquility.

The statute being challenged is not imprecise or overly broad; in fact its terms are not significantly different from those in the breach of peace statute. Conn.Gen.Stat. § 53–174 (1958). That law defines as criminal similar conduct to that which is being challenged here. It provides in part:

"Any person who disturbs or breaks the peace by tumultuous and offensive carriage, noise or behavior, or by threatening, traducing, quarreling with, challenging, assaulting or striking another or disturbs or breaks the peace, or provokes contention, by following or mocking any person, with abusive or indecent language, gestures or noise \* \* \*."

This latter statute has been previously declared constitutional on its face. Watch Tower Bible & Tract Society v. Bristol, 24 F.Supp. 57 (D.Conn.) aff'd per curiam 305 U.S. 572, 59 S.Ct. 246, 83 L.Ed. 361 (1938), as well as by the present panel. See, Barber v. Kinsella, 277 F.Supp. 72 (D.Conn.1967). An analagous state statute relating to incitement to violence, § 53–44, was also found constitutional by the same panel. It prescribed criminal penalties for anyone who "advocates, encourages, justifies, praises, incites or solicits any assault upon \* \* \* the police \* \* \*." The Court found that the law was:

"(N)either overbroad nor vague, nor does it, though precise, penalize constitutionally protected conduct. To encourage an assault on a policeman or individual is 'likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, unrest \* \* \*.' " Turner v. LaBelle, 251 F.Supp. 443, 446 (D.Conn.1966, 3-Judge District Court).

The challenged statute has a valid public purpose to preserve the public order; and it describes with adequate precision the type of emblems or symbols prohibited. See, Musser v. Utah, 333 U.S. 95, 97, 68 S.Ct. 397, 92 L.Ed. 562 (1948). Since the punishment imposed would only be invoked for an act "knowingly done" with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from any lack of warning or knowledge, that the act which he commits is in violation of the law. Juries regularly evaluate the factual elements related to the proof of criminal conduct under the court's charge and guidance. This statute presents to the Court no unusual burden. I would find the law constitutional as written.