**UNITED STATES of America, Plaintiff,**

v.

**George Lyman WILSON, John Robert Stambaugh, Michael S. Skott, James A. Ketchum, Robert C. Braun, and Daniel J. Balint, Defendants.**

No. 94–CR–140.

United States District Court,
E.D. Wisconsin.

April 30, 1998.

Mel S. Johnson, Asst. U.S. Atty., Milwaukee, WI, for Plaintiff.

Robert J. Penegor, Cameron & Penegor, Brookfield, WI, for George Lyman Wilson.

Michael Skott, South Milwaukee, WI, pro se.

Patrick C. Brennan, Brennan, Ramirez, Wilmouth & Sesini, Milwaukee, WI, for Robert Braun.

James S. Smith, Borgelt, Powell, Peterson & Frauen, Milwaukee, WI, for John Robert Stambaugh.

John T. Wasielewski, Wasielewski & Erickson, Milwauke, WI, for James A. Ketchum.

William R. Kerner, Groh & Hackbart, Milwaukee, WI, for Daniel J. Balint.

## DECISION AND ORDER

RANDA, District Judge.

The above-named defendants were brought to trial for allegedly violating the provisions of 18 U.S.C. § 248(a)(1), part of the Freedom of Access to Clinics Entrances Act ("FACE"). That provision reads:

(a) Prohibited activities.—Whoever—

(1) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services; ... shall be subject to the penalties provided in subsection (b) and the civil remedies provided in subsection (c), except that a parent or legal guardian of a minor shall not be subject to any penalties or civil remedies under this section for such activities insofar as they are directed exclusively at the minor.

To find any of the defendants guilty of violating 18 U.S.C. § 248(a)(1), the government must prove the following three elements beyond a reasonable doubt:

■ First, that the defendants engaged in physical obstruction of a reproductive health facility. It is beyond dispute that the defendants did indeed obstruct the entrances to a building recognized by the statute as a "reproductive health facility." The evidence is clear that all defendants participated in blocking the only two entrances to the facility by disabling motor vehicles in front of said entrances and then connecting various parts of their bodies to said vehicles in such a way that prevented the easy removal of the vehicles.

The second element requires the government to prove that the defendants intended to interfere with or attempted to interfere with persons attempting to gain entrance or egress to said clinic. Here too, the facts clearly show that the defendants intended their obstruction to prevent or attempt to prevent the entrance or egress of anyone to the building in question.[1]

■ The third and last element, called the "motive" element, requires that the defendants' intentional interference or attempt to interfere with persons entering or exiting the clinic was done for the express purpose of preventing such persons from obtaining or providing reproductive health services. Because motive is what prompts a person to act or fail to act, the government must prove that this was the specific reason for the defendants' actions. This element makes the FACE law unique in that most crimes require only the proof of an act and an intent to so act. Motive is usually relegated to the status of immateriality. Thus, "[t]he motive of the defendant is ... immaterial except insofar as evidence of motive may aid in the determination of state of mind or the intent of the defendant." *See,* 1 Devitt, Blackmar, Wolff & O'Malley, *Federal Jury Practice and Instructions,* § 17.06 (14th Ed.). Indeed, the instruction committee of the Seventh Circuit "recommends that no instruction be given on [the] subject" of motive. 1 Federal Criminal Jury Instructions of the Seventh Circuit, § 3.03 (1980 pamph.). "Instructions on motive have been used either to enunciate its immateriality to the proof of the case or to distinguish it from intent." *Id.* In general, while motive may be probative of intent, it is not necessary, in the majority of cases, to prove motive in order to prove intent.

■ Conversely, proof of intent is not itself proof of motive, and while in the usual criminal case proving the reason someone acted may go toward establishing whether that person intended to act, proof of the intention to act does not establish the reason for the act. FACE, however, requires the government to prove not only the act and the intent, but also the requisite reason or motive for the intended action; here, to prevent

---

1. One of the defenses to this case is that the government failed to show that any particular person was interfered with by the defendants' obstruction. This need not be proven by the government because clearly the defendants attempted to do so. No other conclusion could be drawn from the facts because the defendants created an obstruction that prevented any movement by anyone into or out of the premises. It required the Milwaukee Fire Department to spend hours on the removal of the obstruction.

the receipt or provision of reproductive health services. Defendants argue that the government has not shown the requisite reason.

The defendants' position is highlighted by the argument of defendant Wilson. Wilson argues that because protection of pre-born babies does not fall within the meaning of "reproductive health services" the government has not proven that defendants' motives were to prevent the receipt or delivery of reproductive health services. "[H]e did not act 'because' persons were obtaining or providing reproductive health services, but he acted to protect babies 'in spite of' the effect his conduct would have upon persons obtaining reproductive health services." (Wilson's Proposed Findings of Fact and Conclusions of Law at 13.)

This argument is rooted in a misunderstanding or misinterpretation of the term "reproductive health services" as defined by Congress. 18 U.S.C. § 248(e)(5) defines reproductive health services to include "medical ... services relating to ... the termination of pregnancy." "Termination of pregnancy" includes abortion and/or the destruction of pre-born babies. And it was Congress' desire to facilitate the voluntary termination of pregnancies which brought FACE into existence. Therefore, the defendants, by admitting that their motive for obstructing the clinic was to protect pre-born babies from being killed in their mothers' wombs, admit to a motive proscribed by the statute. To "protect the pre-born" under these circumstances is to interfere with the receipt or provision of "reproductive health services", at least as Congress defines the phrase. Defendants' argument that a *reproductive* health service cannot be a *destructive* service (and therefore their motive for obstruction was not one proscribed by the statute), while certainly logical, cannot be reconciled with Congress' Orwellian definition of "reproductive" services.[2] Despite having the benefit of logic, defendants lack the benefit of the law. Under these facts,

the government has proven the final element of the offense beyond a reasonable doubt. The Court finds all the defendants guilty of violating 18 U.S.C. § 248(a)(1).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Each defendant is found **GUILTY** of the charge alleged in the Information.

2. The parties will be contacted by the Court for the purpose of scheduling a date for sentencing upon return of a pre-sentence report.

3. The same conditions of release will apply pending sentencing.

**SO ORDERED.**

---

2. For instance, the term "reproduce" in the biological sense (which is the sense in which it is used in the statute) means "[t]o generate (offspring)...," *The American Heritage Dictionary*, 1050 (2nd Coll. Ed.), not to destroy offspring, which of course is the purpose of "abortion," a word subsumed within the phrase "reproductive health services." Abortion, of course, means "an induced termination of pregnancy before the fetus is capable of survival," or "[a] fatally premature expulsion of [a] ... fetus from the womb." *Id.* at 68.