Thomas SHARPE, M.D., Plaintiff,

v.

Charles P. CONOLE; Robert Leader; R. Mike Lawler; Virgilio Rigor; Vijay Kumar, M.D.; Donald Schuessler, M.D.; Steve Burkhart, M.D.; Suny Syracuse Health Science Center; New York State Department of Health; Barbara Debueno, M.D., Commissioner; Martha Ellen; and Watertown Daily Times, Defendants.

No. 99–CV–0971.

United States District Court,
N.D. New York.

Dec. 7, 2000.

Thomas Sharpe, M.D., Gouverneur, NY, pro se.

Hancock & Estabrook, LLP, Syracuse, NY, for defendants, Mark J. Schulte, of counsel.

## MEMORANDUM—DECISION & ORDER

McAVOY, District Judge.

In a prior Decision & Order, familiarity with which is assumed, the Court set forth

the factual and procedural background of this action. *See Sharpe v. Conole*, 99–CV–971, March 31, 2000, Dkt. No. 70.[1] Presently before the Court is Defendants Conole, Leader, Rigor, Kumar, and Scheussler's motion pursuant to FED.R.CIV.P. 12(c) to dismiss the remaining causes of action under the Freedom of Access to Clinic Entrances Act of 1994, 18 U.S.C. § 248 ("FACE") for the following reasons: (1) the Complaint fails to state a cause of action under FACE because it does not allege the requisite intent; (2) Defendants' participation in state mandated quality assurance programs provides them with immunity from the present claims; (3) the present action is barred by Plaintiff's written release; and (4) Plaintiff's claims should be barred by a one-year statute of limitations.[2]

Pursuant to FED.R.CIV.P. 12(b)(6), the Court cannot consider the affidavits and exhibits submitted by both parties in support of or in opposition to the instant motion without converting the motion to a motion for summary judgment. *See, e.g., Fonte v. Board of Managers of Continental Towers*, 848 F.2d 24 (2d Cir.1988). On October 23, 2000, this Court issued an Order notifying the parties that it would convert the motion to dismiss to one for summary judgment. The Court further allowed the parties to submit additional materials in support or opposition to summary judgment within fourteen calendar days. The Court issued a second Order dated November 11, 2000, to ensure that Plaintiff understood the potential ramifications of a summary judgment motion. Plaintiff submitted additional opposition papers in response to both orders. *See* Dkt. Nos. 100, 102, 103.

Accordingly, the Court will consider the instant motion as a motion for summary judgment. In addressing the motion, the Court will apply the well-settled standard for summary judgment, which need not be restated here. *See Roman v. Cornell Univ.*, 53 F.Supp.2d 223, 232–33 (N.D.N.Y. 1999); *Phipps v. New York State Dep't of Labor*, 53 F.Supp.2d 551 (N.D.N.Y.1999); *Riley v. Town of Bethlehem*, 44 F.Supp.2d 451, 458 (N.D.N.Y.1999).

■ Defendants first argue that the claims against them should be dismissed because Plaintiff does not allege the intent necessary to set forth a prima facie case. To state a claim under 18 U.S.C. § 248(a)(1), Plaintiff must allege three elements: (1) use or threat of force or physical obstruction of a reproductive health facility; (2) that the obstruction intentionally injure, intimidate or interfere with or attempt to injure, intimidate or interfere with persons; and (3) that the defendant's actions be taken because the interfered-with person is or has been obtaining or providing reproductive health services, or in order to intimidate such person or any other person or class of persons from obtaining or providing reproductive health services. *See United States v. Balint*, 201 F.3d 928, 932 (7th Cir.2000); 18 U.S.C. § 248.

Defendants argue that, although Plaintiff alleges that they acted with a variety of unsavory motives (including improper financial gain, professional rivalry, person-

---

1. In that decision, the Court, *inter alia*, dismissed the Complaint against Defendants Lawler, Mroz, DeBueno, Choate, Burkhart, SUNY Syracuse Health Science Center, the New York State Department of Health, the Watertown Daily Times, and Martha Ellen.

2. As Defendants note, the Court considered the applicable statute of limitations in a prior Decision & Order and determined that the correct statute of limitation for this action is four years. *See Sharpe v. Conole*, 99–CV–971, March 31, 2000, Dkt. No. 70. Local Rule

7.1(g) governs motions for reconsideration or reargument of orders that are not final. Local Rule 7.1(g) provides that such motions must be served no later than 10 days after the entry of the challenged judgment. This motion was filed September 12, 2000, several months after the Court rendered a decision on the statute of limitations issue. Thus, Defendants' motion for reconsideration of the statute of limitations issue is time-barred and will not be considered by the Court.

al animosity, the desire to find evidence for medical malpractice actions against Plaintiff, and intoxication, *see* Def.Mem. of Law at 5; *see also*, Amended Complaint at pp. 2–3, ¶¶ 5–8; pp. 9–11, ¶¶ 5–10, 13; pp. 17–18, ¶¶ 2–7; p. 30, ¶¶ 3–7; pp. 10–11, ¶¶ 10, 13; pp. 4–6, ¶¶ 20, 29), Plaintiff's Amended Complaint does not allege that they were motivated by Dr. Sharpe's status as a provider of reproductive care or a desire to deter people from receiving reproductive medical care. Without alleging this type of motivation, Defendants contend, Plaintiff has failed to state a claim.

Plaintiff responds that to prove intent under FACE, he only needs to allege that a defendant intended to obstruct and interfere with the obtaining and provision of reproductive health services, *see U.S. v. Weslin*, 156 F.3d 292, 298 (2d Cir.1998), and that the Amended Complaint alleges such action. *See* Pl.Mem. of Law at 2.

In *Weslin*, the Second Circuit upheld a criminal conviction under FACE based on a sit-down protest that blocked entrances to a clinic providing abortions services. Defendants appealed their conviction, arguing, *inter alia*, that they did not have the requisite *mens rea* because their motivation was to save the lives of unborn children rather than interfere with reproductive services. *See Weslin*, 156 F.3d at 298. The court recognized that the defendants "meant to block the entrance to the Planned Parenthood clinic ... and they did so because they wished to prevent the clinic from performing abortions." *Id.* The court, therefore, found that the actual motivation behind the Defendants' actions was irrelevant so long as they "intended to obstruct and interfere with obtaining and providing reproductive health services." *Id.; see also United States v. McDaniel*, 175 F.3d 1009, 1999 WL 177275, at *1 (2nd Cir. Mar.26, 1999) (Table) ("[The *Weslin* holding] follows from the statute itself, which proscribes interfering with a person's access to reproductive services 'because that person is or has been ... obtaining or providing reproduc-

tive services.' ") (internal citations omitted).

The cases relied on by Plaintiff are factually inapposite, they involve attempts to physically bar clinic entrances because those clinics provided reproductive services, the type of conduct FACE was enacted to address. *See, e.g., United States v. Hart*, 212 F.3d 1067 (8th Cir.2000) (parking Ryder trucks in front of abortion clinic in attempt to save unborn babies); *McDaniel*, 175 F.3d 1009, 1999 WL 177275, at *1 (blockading clinic in order to prevent people from receiving and providing abortions); *U.S. v. Operation Rescue Nat'l*, 111 F.Supp.2d 948, 958 (S.D.Oh. 1999) (physically obstructed entrance to clinic); *United States v. Wilson*, 2 F.Supp.2d 1170, 1171 (E.D.Wi.) (same), *aff'd*, 154 F.3d 658 (7th Cir.1998), *cert. denied*, 525 U.S. 1081, 119 S.Ct. 824, 142 L.Ed.2d 681 (1999).

■ Moreover, Plaintiff's interpretation of *Weslin* to mean that he has to show only that Defendants actually interfered with or obstructed his provision of reproductive services rather than that they acted in this way because he provided such services, is incorrect. *See* 18 U.S.C. § 248(a)(1); *see also McDaniel*, 175 F.3d 1009, 1999 WL 177275, at *1 ("Defendants stipulated that their purpose in blockading the clinic was 'in order to prevent people from receiving and [the clinic] staff from providing, abortions.' Defendants' actions, therefore, fall squarely within the ambit of the statute."); *U.S. v. Lynch*, 162 F.3d 732 (2d Cir.1998); *Operation Rescue Nat'l*, 111 F.Supp.2d at 958 ("Finally, the legislative history and courts have noted that the phrase 'because that person is or has been ... providing reproductive health services,' requires that the [plaintiff] prove that the defendant's actions were motivated by the fact that a person is or has been obtaining or providing such services.") (citations omitted); *Wilson*, 2 F.Supp.2d at 1171 (finding that motivation of protecting unborn babies falls within definition of "reproductive ser-

vices" for purpose of FACE's intent element).

Plaintiff's interpretation of FACE's *mens rea* standard (such that one only need show obstruction to prove intent) could lead to ridiculous results. For example, if a building housing medical offices providing reproductive services was condemned for public safety reasons such that access to the building was "obstructed," under Plaintiff's reading of the intent requirement, the individuals responsible for condemning the building as well as those responsible for preventing individuals from entering the unsafe building could be found liable under FACE because they intended to keep medical providers and patients out of the building and, in doing so, interfered with immediate reproductive services. Similarly, if a bomb threat required immediate evacuation of a reproductive clinic, individuals escorting patients and medical service providers out of the facility and/or preventing individuals from entering the facility could be liable under FACE. Contrary to Plaintiff's assertions, in these circumstances, the fact that an individual physically obstructed or literally interfered with provision of reproductive services would not suffice to establish a violation of FACE as the obstruction or interference was because of a threat to patients and providers safety rather than because the patients were receiving and the providers providing reproductive services.

■ In this case, Plaintiff has not alleged that Defendants obstructed or interfered with the provision of reproductive services because Plaintiff provided such services (in fact, Plaintiff alleges in part that his patients were unlawfully referred to other obstetricians or to providers in Syracuse, New York whom he considered inept), but rather, the facts indicate that Plaintiff was prevented from providing certain services due to hospital policy (amniocentesis procedures were done in Syracuse) and/or as part of a quality assurance program mandated by New York Law.[3] *See* N.Y .Educ.Law § 6527; N.Y.Pub. Health Law §§ 2805 j–m, 2807–i; N.Y. Mental Hyg.Law § 29.29; 10 N.Y.Code Rules and Reg. §§ 405.6, 407.6. In these circumstances, a reasonable fact finder could not find that Defendants' actions satisfy the intent requirement of FACE.

The legislative history of FACE supports this decision, as well as the Court's interpretation of *Weslin*, 156 F.3d at 298, regarding FACE's intent requirement. The legislative history is peppered with references to violence and examples illustrating that the purpose of the act is to "prevent the growing violence accompanying the debate over the continued legality and availability of abortion and other reproductive services." H.R.Rep. No. 306, 103d Cong.2d Sess. 6–7 (1994), reprinted in 1994 U.S.C.A.N. 699. The report states, "[i]n order to narrowly tailor this legislation to those activities found by the Committee to warrant new federal remedies, the act requires that the offender be motivated by the involvement of the victim or others in obtaining or providing reproductive health services." *Id.* at 709. The legislative history clearly indicates that FACE was not enacted to address the prohibition of certain services by a medical provider pursuant to internal hospital regulations and/or quality assurance programs.

Plaintiff has provided no evidence that Defendants used force, threats of force, or physical obstruction to interfere with his provision of medical services because because he is or was providing reproductive health services. *See, e.g., Balint*, 201 F.3d at 932. Thus, taking all inferences in favor

---

**3.** As discussed in previous decisions in this case, E.J. Noble suspended Plaintiff's privileges on May 22, 1996, pending a State Department of Health investigation. Apparently, Plaintiff's privileges were renewed on June 24, 1996 and then his inpatient privileges were suspended on July 7, 1996. Plaintiff surrendered his license to practice in New York on June 11, 1997.

of Plaintiff, a reasonable jury could not conclude that Defendants violated FACE. Accordingly, Defendants' motion for summary judgment is GRANTED and Plaintiff's Amended Complaint is dismissed in its entirety.

## III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's Amended Complaint is dismissed in its entirety.

**IT IS SO ORDERED**